## MITCHELL FERTILIZER COMPANY v. ARMOUR.

Argued November 6, 1908—Decided June 7, 1909.

1. A lease for more than a year expired October 1st, 1906, but lessee continued in possession till September 30th, 1907, paying the same monthly rent. On December 6th, 1906, in acknowledging a receipt of rent, lessor said in a letter to lessee that it would regard lessee's continued occupation as a renewal of the lease for one year from October 1st. Twelve days later lessee sent notice by letter that he would quit possession on March 1st, in accordance with an alleged verbal agreement. To this lessor replied on January 10th that it regarded his holding over after October 1st as a new tenancy for one year at the same rent, and that no different agreement had been made, and if lessee vacated on March 1st it would hold him for rent to October 1st, 1907. *Held,* that this correspondence did not show a new letting for a year from October 1st, 1906, in the absence of which it was undisputed that lessor's possession was still that of a tenant from year to year, and his right to a continued possession, and lessor's right to rent, would cease only on three months' notice to quit or of intention to quit, or by agreement.

2. The lease of a tenant from year to year could be terminated on October 1st, 1907, by a three months' notice to quit. On June 24th, 1907, his agent wrote lessor that, if it had not leased the premises, they might use them for a period commencing October 1st, and requested a personal interview. On June 27th, lessor answered offering to see him at his convenience. On July 1st, 1907, he replied that he would call later, and on July 16th again wrote, saying he had been away, and asked if lessor had come to any conclusion. There the matter dropped. *Held,* that this did not constitute notice on lessee's part of an intention to quit, but rather indicated a wish to stay.

On action by the Mitchell Fertilizer Company against J. Ogden Armour. There was a judgment for plaintiff, and it is ruled to show cause why a new trial should not be granted. Judgment affirmed.

Before Justices REED, BERGEN and MINTURN.

For the plaintiff, *Clark McK. Whittemore.*

For the defendant, *Gaskill & Gaskill.*

The opinion of the court was delivered by

REED, J. This cause was tried at Union Circuit before Judge Vail, a jury having been waived. The action was brought to recover $166.67 as rent for certain premises which had been leased by the plaintiff, the Mitchell Fertilizer Company, to the defendant, J. Ogden Armour. The original lease, which was dated July 20th, 1905, ran for one year, two months and ten days, and so expired October 1st, 1906. The defendant, Armour, after the expiration of his term under the lease, continued in possession until September 30th, 1907, paying during this extended period of possession the same rent at the same date as under the lease, namely, a monthly payment of $166.67 each month. On September 30th, 1907, Armour abandoned the possession of the premises. This action is for the recovery of the rent for the month of October, 1907.

The right to recover is based upon the theory that Armour was from October 1st, 1906, the end of his term under the lease, a tenant from year to year, and that, because of his failure to give notice to his landlord of his intention to quit at the end of the year, his tenancy continued indefinitely until terminated by a notice. The insistence of the defendant is that, after the termination of his term under the lease, he became a tenant, not from year to year, but a tenant for another year. He insists, *secondly,* that, if he did become a tenant from year to year, there was sufficient notice given to the landlord of the tenant's intention to quit on October 1st, 1907. It is not denied that the holding over of Armour after his lease expired on October 1st, 1906, and the payment and acceptance of rent after that date, standing alone, gave Armour the *status* of a tenant from year to year. Nor is it denied that, if he was a tenant from year to year, his right to a continued possession of the premises, and the landlord's right to receive rent, would cease only upon a three months' notice to quit, or three months' notice of an intention to quit, or by an agreement to end their existing relations. The ground taken by the defendant is that certain letters which

passed between him and the plaintiff altered the relations which would otherwise have existed. The first of these letters was written under date of December 6th, the lease having expired on October 1st, and was from the fertilizer company acknowledging the receipt of a check from Armour for rent for the month of November, 1906. In this letter the fertilizer company said that, as no other arrangements had been made, it would regard the continuance of Armour in occupation of the premises as a renewal of the previous lease for one year from October 1st, at the same rent as previously paid. Twelve days later, namely, on December 28th, Mr. Armour wrote as follows to the fertilizer company : "This is to notify you that we will quit and give you possession of the property on March 1st, 1907. This is in accordance with the verbal understanding made with Mr. Moore at Providence, Rhode Island, and confirmed by you by wire later." To this letter the fertilizer company replied January 10th, as follows: "* * * As I informed you about a month ago, we regard your holding over after October 1st, when the lease expired, as a new tenancy for one year at the same rent. No different agreement has been made between us. If you vacate the property on March 1st we shall hold you responsible for the rent to October 1st, 1907," &c. Defendant insists that plaintiff is estopped by its two letters of December 6th, 1906, and January 10th, 1907, from now insisting that the holding of Armour after October 1st, 1907, was a holding from year to year, and not a holding for one year from October 1st, 1907, to October 1st, 1908.

It is to be observed that, when the letters of December 6th and January 10th were written, plaintiff had no right to insist that Mr. Armour pay rent beyond October 1st, 1907. All that it could then insist upon was that he was bound to pay up to that time. Whether the term would be extended beyond that time depended entirely upon the conduct of the parties, each having the right to terminate the holding on October 1st, 1907, by a three months' notice. Therefore the fertilizer company could not have said that it regarded Mr. Armour's holding over as a new lease for more than a year. It was

only after the 1st of July, 1907, had passed, without a notice from Armour that he intended to quit, that the fertilizer company had any assurance that Armour's term would run beyond October 1st, 1907. We think that the trial judge was right in holding that this correspondence did not show that there was a new letting for a year from October 1st, 1906, and so was right in holding that the tenant's possession was that of a tenant from year to year.

The further correspondence between the parties consisted of a letter from Mr. Moore representing the defendant, Armour, to Mr. Mitchell, president of the fertilizer company. This letter was dated June 24th, 1907. In it Mr. Moore said: "If you have not leased the warehouse at Tremley Point we might make use of it for a period commencing October 1st." He then requested a personal interview concerning the matter. On June 27th Mr. Mitchell answered, "Can see you in Providence at your convenience." Mr. Moore replied July 1st, 1907, that he would call upon Mr. Mitchell on July 8th, and wrote again on July 16th that he had been away, and when returning did not have the opportunity to stop at Providence, asking if Mitchell had come to any conclusion about the matter discussed when the writer saw him. There the matter dropped, and it is admitted that the parties had no meeting thereafter. The trial judge found that the letter of June 24th, 1907, was not sufficient notice that the tenant intended to vacate the leased premises. It is perceived that this letter of June 24th, 1907, was written before July 1st, and so there was still time for either party to give notice which would terminate the holding on October 1st. Armour could not continue his tenancy beyond October 1st, unless the company failed to notify him to quit, or unless they entered into some new agreement, so the fact that Armour wished to contract to remain after October 1st was not a notice that he intended to vacate on that date. It was rather an indication that he wished to stay, and knowing that without a new contract he could be dispossessed after October 1st if the fertilizer company so desired, he wished to enter into a contract for further occupation. In view of this situation, we think

the trial judge was correct in holding that the letter of June 24th was not a notice of an intention to quit.

We find no error in the finding of the trial judge, and the judgment should be affirmed.